IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT ALLEN CROMWELL,

        Petitioner,

v.

JOSHUA HIGHBERGER,

        Respondent.

Case No. 6:22-cv-00361-MO

OPINION AND ORDER

Robert Allen Cromwell
20385560
Oregon State Correctional Institution
3405 Deer Park Drive SE
Salem, OR 97310-9385

        Petitioner, *Pro Se*

Ellen F. Rosenblum, Attorney General
Daniel T. Toulson, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

        Attorneys for Respondent

1 – OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his Lane County convictions dated June 6, 2014. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

Petitioner and his fiancée, Casey Wright, were living together in 2013 when she informed him that she was going to move out while she reconsidered her relationship with him. In the days that ensued, the two continued to see each other and Petitioner endeavored to convince Wright to remain with him. However, on November 1, 2013, Wright informed Petitioner that she had become romantically involved with another man. Although Petitioner initially displayed a calm demeanor upon hearing the news, after Wright fell asleep he examined her phone and discovered that she had been texting two other men, at least one of whom she had been sleeping with. Petitioner became enraged and hit Wright in the head with a baseball bat four times as she slept.

Wright did not survive the attack, and Petitioner attempted to commit suicide by cutting his wrists, but ultimately called his mother and asked her to take him to the hospital. Petitioner confessed to hospital staff and the police that he had murdered Wright. At the beginning of his first police interview, Petitioner began to explain to Detective Don Myers that he and Wright were having a nice evening and had fallen asleep together. As he was beginning to explain what happened, a sergeant entered the interrogation room and interrupted the interview. Myers stepped out and, when he returned, informed Petitioner that part of the lighting system was out so if the lights happened to lose power, Petitioner shouldn't "freak out." Respondent's Exhibit 104, p. 35. The following exchange then took place:

    Petitioner:    What happens if I do?

> Detective: Well . . .
>
> Petitioner: I mean I don't have a lawyer so . . .
>
> Detective: Yeah, and I know that, but I was here to find out if you wanted to tell me what happened so we have a little bit better understanding of that and you said things were going pretty good tonight.

*Id* at 36. Petitioner did not make any more mention of a lawyer. He proceeded to make incriminating statements, claiming that he had simply snapped and that he had bludgeoned Wright to death with the baseball bat while she slept.

The Lane County Grand Jury indicted Petitioner on one count of Murder and one count of Unlawful Use of a Weapon. Respondent's Exhibit 102. He filed a pretrial motion to suppress his confession to police, arguing that when he made an equivocal invocation of his right to counsel, Oregon law required Detective Myers to clarify whether Petitioner was invoking his right to counsel.[1] Respondent's Exhibit 103, pp. 46-50. The trial judge denied the motion, finding that Petitioner's statement was not tantamount to an equivocal assertion of his right to counsel therefore Oregon Law did not require any further inquiry by the officers at that time. Transcript (#23-1), p. 148. The judge also concluded that even if the statement had amounted to an equivocal invocation of Petitioner's right to counsel, the circumstances surrounding the equivocal invocation "would have obviated the need for further inquiry" under Oregon state law. *Id* at 149-50.

Petitioner proceeded to trial where he claimed that he suffered from an extreme emotional disturbance such that he was guilty of the lesser crime of Manslaughter in the First Degree, not Murder. The jury ultimately found him guilty of Murder and Unlawful Use of a

---

[1] The defense conceded that Petitioner's statement about not having a lawyer was not an unequivocal invocation of his right to counsel. Transcript (#23-1), p. 148.

3 – OPINION AND ORDER

Weapon, and the trial court sentenced him to life in prison with the possibility parole after 25 years.

Petitioner took a direct appeal where he argued that the trial court should have suppressed his confession to police because he had made an equivocal invocation of his right to counsel when he stated, "I don't have a lawyer, so." Respondent's Exhibit 103, pp. 29-33. He claimed that: (1) under the Oregon Constitution, Detective Myers was obligated to ask clarifying questions as to whether Petitioner was invoking his right to counsel; and (2) pursuant to the Fifth Amendment to the U.S. Constitution, Petitioner's statement amounted to an invocation of his right to counsel such that the detective was required to cease his questioning altogether. Respondent's Exhibit 103. The Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. *State v. Cromwell,* 281 Or. App. 284, 381 P.3d 1123 (2016), *rev. denied,* 360 Or. 752 , 388 P.3d 724 (2017).

Petitioner next filed for post-conviction relief ("PCR") in Marion County where he asserted that he was the victim of ineffective assistance of counsel in a variety of particulars. The PCR court denied relief on all of his claims. Respondent's Exhibit 127. The Oregon Court of Appeals affirmed the lower court's decision without opinion, and the Oregon Supreme Court denied review. *Cromwell v. Kelly,* 313 Or. App. 502, 490 P.3d 164, *rev. denied,* 368 Or. 787, 498 P.3d 298 (2021).

On March 4, 2022, Petitioner filed his Petition for Writ of Habeas Corpus in which he raises seven grounds for relief:

> 1. The trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when it denied his pretrial motion to suppress evidence of his police interrogation;

4 – OPINION AND ORDER

  2. Petitioner was the victim of ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his attorneys failed to prevent the introduction of inadmissible, prejudicial prior bad acts evidence;

  3. Petitioner's trial attorneys were ineffective when they failed to call witnesses, such as Dr. Jerry Larsen, to support his extreme emotional disturbance defense. Experts such as Dr. Larsen would have identified petitioner's mental health diagnoses and explained how those diagnoses can affect and be affected by extreme emotional disturbance;

  4. Trial counsel failed to supplement the extreme emotional disturbance defense and jury instruction with a Manslaughter in the First Degree instruction;

  5. Petitioner's trial attorneys failed to object to the extreme emotional disturbance instruction because it incorrectly stated the "reasonableness" requirement of that defense;

  6. Petitioner's trial attorneys rendered ineffective assistance when they failed to submit a special jury instruction, object to the court's instruction that provided for an incorrect order of deliberations, and failed to poll the jury; and

  7. Appellate counsel was ineffective for failing to assign as error and argue issues associated with the improper jury instructions and the jury's verdict.

  Respondent asks the Court to deny relief on the Petition because: (1) Ground One fails to state a cognizable habeas corpus claim; (2) Petitioner failed to fairly present Grounds One, Two, Four, Six, and Seven to Oregon's state courts and, because he may no longer do so, those claims are now procedurally defaulted; and (3) the state-court decisions denying relief on Grounds Three and Five were not unreasonable. Although Petitioner's supporting memorandum was due March 2, 2023, he has not filed a brief or otherwise responded to Respondent's arguments.

///

///

5 – OPINION AND ORDER

**DISCUSSION**

I.      **Failure to State a Claim**

As Ground One, Petitioner contends that the trial court committed an error of federal constitutional dimension when it denied his pretrial motion to suppress his confession to authorities. Respondent asserts that this fails to state a cognizable claim for federal habeas corpus relief because: (1) habeas corpus relief is reserved for errors of federal law; and (2) the facts in the Petition supporting Ground One rely on Oregon's state standard of clarification regarding equivocal requests for counsel, not unambiguous requests for counsel under the U.S. Constitution. *Compare State v. Montez,* 309 Or. 564, 572-73 (1990) *with Davis v. United States,* 512 U.S. 452, 461 (1994).

While an inquiry into alleged errors of state law exceeds the scope of federal habeas corpus review, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), Petitioner still alleges that the trial court's ruling on his motion to suppress violated his rights under the U.S. Constitution. Although the claim is procedurally defaulted and lacks merit (as discussed below), Petitioner's allegation that a claim of trial court error violated his Fifth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution is sufficient to state a valid claim for pleading purposes.

II.     **Exhaustion and Procedural Default**

   A.   **Standards**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state

courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)).

If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In this respect, a petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

    B.    <u>Analysis</u>

Respondent contends that Petitioner failed to fairly present his Ground One claim to Oregon's state courts because he did not allege a federal constitutional error in the trial court, therefore it was ineligible for direct appellate review. In his pretrial proceedings Petitioner argued that Oregon law requires interrogating officers to clarify his equivocal invocation of the right to counsel. Respondent's Exhibit 103, p. 47. He claimed that Detective Myers violated this standard when he never made any attempt to ask clarifying questions following Petitioner's statement that he did not have a lawyer, something trial counsel clearly stated was not an unequivocal request for counsel. *Id* at 48*;* Trial Transcript, pp. 129-30 ("It's an equivocal

expression, it's not an unequivocal expression."). Only when he proceeded to his direct appeal did he allege that Detective Myers not only violated the Oregon Constitution with his questioning, but also ran afoul of the U.S. Constitution by ignoring what amounted to an unequivocal invocation of his right to counsel. *Id* at 33-35.

Oregon's preservation requirements for appeal are very standard. "Generally, an issue not preserved in the trial court will not be considered on appeal." *State v. Wyatt*, 331 Or. 335, 341, 15 P.3d 33 (2000); *see also* ORAP 5.45(1). Here, Petitioner did not rely upon a federal basis in his pretrial motion to exclude his confession. As a result, on direct appeal, the State did not brief the merits of the federal constitutional claim Petitioner now raises in Ground One and, instead, argued only that Petitioner failed to preserve the challenge. Respondent's Exhibit 104, pp. 7-8. The Oregon Court of Appeals affirmed the trial court's decision without issuing a written opinion. Where Petitioner did not raise the federal issue during his trial, and where the Oregon Court of Appeals did not even have the benefit of briefing from the State as to the federal constitutional issue, it is difficult to see how Petitioner fairly presented his Ground One claim to Oregon's state courts in a procedural context in which the appellate court actually considered its merits. The claim therefore appears to be procedurally defaulted.

The Court is, however, aware of the Ninth Circuit's decision in *Smith v. Or. Bd. Of Parole & Post-Prison Supervision*, 736 F.3d 857 (9th Cir. 2013), wherein it concluded that an appellate court's silent affirmance can potentially constitute an affirmance on the merits even in the context of an unpreserved claim. Assuming *Smith* establishes that Petitioner fairly presented his Ground One claim to Oregon's state courts in a context in which those courts considered its merits, Petitioner is plainly not entitled to relief. The U.S. Constitution is implicated only where a criminal suspect clearly invokes his right to counsel and law enforcement continues to

8 – OPINION AND ORDER

nevertheless question him; ambiguous and equivocal requests for counsel do not suffice. *Davis*, 512 U.S. at 461. In this case, as Petitioner repeatedly represented during his trial, his statement that he did not have an attorney did not amount to an unequivocal invocation of his right to counsel. *See, e.g.*, Trial Transcript, pp. 129-21; Respondent's Exhibit 103, pp. 46-50. Ground One therefore does not entitle Petitioner to relief under any standard of review.

Grounds Two, Four, Six, and Seven raise claims of ineffective assistance of counsel that were not the subject of Petitioner's PCR appeal. In his PCR Appellant's Brief, he faulted his trial attorneys for failing to: (1) call an expert witness to support the extreme emotional disturbance defense; and (2) object to the uniform extreme emotional disturbance instruction. Respondent's Exhibit 128. These claims correspond to Grounds Five and Seven, respectively, of the Petition for Writ of Habeas Corpus. Where Petitioner did not pursue any other claims of ineffective assistance of counsel during his PCR appeal, and as the time for doing so passed long ago, Grounds Two, Four, Six, and Seven are procedurally defaulted.

### III.  Merits Analysis of Grounds Three and Five

#### A.  Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

### B.     Ground Three: Failure to Call Expert Witness

Prior to his criminal trial, Petitioner's attorneys filed a notice that they intended to introduce testimony of Petitioner's extreme emotional disturbance ("EED"). They retained Dr. Jerry Larsen to prepare a report on that topic. During his PCR proceeding, Petitioner alleged that his trial attorneys were ineffective for failing to call Dr. Larsen to explain to the jury that he "suffered from multiple Axis I diagnoses including Recurrent Major Depressive Disorder with psychotic features and probable bipolar disorder." Respondent's Exhibit 111, p. 2. He pursues the same claim in Ground Three of his Petition for Writ of Habeas Corpus.

The Court uses the general two-part test established by the Supreme Court to determine whether Petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, Petitioner must show that his counsel's performance fell below an

objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, Petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether Petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland,* 466 U.S. at 693). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 556 U.S. at 122.

One of Petitioner's trial attorneys submitted a Declaration in which he explained, in detail, multiple reasons underlying the defense's decision not to call Dr. Larsen at trial:

> 3. Our defense was EED. Mr. Cromwell thinks we should have called Dr. Jerry Larsen as a witness in this case to identify Cromwell's mental health diagnoses and to explain the interplay between those and EED. We did not call him for a number of reasons.
>
> 4. Per *State v. Wille,* 317 Or. 128 (1993), an expert cannot express an opinion as to whether defendant acted under an EED.
>
> 5. Per *State v. Counts*, 311 Or. 616 (1991), a person's alleged mental disease or defect is not necessarily a factor in determining if his EED was objectively unreasonable. My reading of *Counts* was that an Axis I mental infirmity that does not rise to the level of a mental defense is something that can be taken into account in determining the defendant's situation. This can potentially include

11 – OPINION AND ORDER

> "organic delusional syndrome" (as discussed in *Counts*) or an anxiety disorder or Bipolar Disorder. I think the decision in *State v. Zielinski* confirms that.
>
> 6.  My concerns about Dr. Larsen's report were that he states, among other things, that: (1) Cromwell "denies significant mood problems" around the time of the homicide, at least prior to seeing what was on Casey Wright's phone; (2) Cromwell was hearing voices, but they were not giving him any directives; (3) Cromwell had no recollection of grabbing the bat or striking the victim with the bat (contrary to what he told detectives); (4) he acted with "marked rage," something that Cromwell vehemently denied (at least with defense counsel – he insisted he was driven by hurt, not rage, and he would correct anyone who failed to see the difference); and (5) Dr. Larsen opines that Cromwell has a "probably BiPolar illness," but does not adequately link that probable disorder with Cromwell's behavior the night of the homicide. On balance, I did not think that Dr. Larsen's evaluation would help us persuade the jury that Cromwell's situation on November 1, 2013 was such that striking Casey Wright with a bat was a reasonable response.
>
> 7.  I also compared Dr. Larsen's report with that of [State's expert witness] Dr. Eric Johnson. I frankly found Dr. Johnson's report to be more thorough. I had prior experience with Dr. Johnson and found him to be a very good and experienced witness who makes a very favorable impression on jurors.
>
> 8. I had filed a motion to prevent Dr. Johnson from opining as to whether Cromwell experienced an EED and from testifying about Cromwell's personality disorders. That motion was granted, much to the dismay of the State. It was important to us to keep Dr. Johnson off the stand for reasons listed below (in addition to his skills as an expert witness). We could not very well offer our own expert at the same time that we were arguing that theirs cannot testify.

Respondent's Exhibit 121, pp. 1-2. Counsel then proceeded to list the reasons he and co-counsel wished to keep Dr. Johnson off the stand. The Court need not reiterate those reasons here.

The PCR judge found that Dr. Larsen's report did not present any evidence "that EED was valid or somehow Dr. Larsen could have testified to that." Respondent's Exhibit 126, p. 48. He also found that counsel's reasons for not calling Dr. Larsen were "excellent," and recognized

the validity of counsel's desire to prevent Dr. Johnson from testifying and thereby make the case even less favorable for the defense. *Id*. He concluded that "there's a failing of evidence there because we really don't know what Dr. Larsen would say on EED, and I also find that these are – this is valid, reasonable, strategic decisions by trial counsel and I do not find error, I do not find prejudice." *Id*.

Counsel had a variety of valid, strategic reasons for not calling Dr. Larsen to testify. In this regard, counsel's performance did not fall below an objective standard of reasonableness, and Petitioner has not established how the PCR court unreasonably applied *Strickland* when it denied relief. The Court therefore denies relief on Ground Three.

### C. Ground Five: Failure to Object to Jury Instruction

As his final ground for relief, Petitioner claims that trial counsel should have objected to the jury instruction on EED jury because it incorrectly stated the reasonableness requirement of that defense. According to Petitioner, the trial court's instruction prevented the jury from applying EED unless it first found that it was reasonable for him to have killed Wright. He concludes that this improperly placed the burden upon him to prove that it was reasonable to have committed that killing.

The PCR judge denied relief on this claim, stating not only that he disagreed with Petitioner's interpretation of the instruction, but that it had been the standard and accepted instruction in Oregon for decades at the time of Petitioner's trial:

> . . . I do not find this argument to be persuasive. I find nothing in the record that supports it, just as that was one reason for my question, and the evidence that I was given, I just – I interpret it totally different. And I do not find error, particularly in a situation where this was an instruction that has been in place since the last Supreme Court ruling in this area, and we haven't had a Supreme Court ruling since then.

13 – OPINION AND ORDER

> We have some Court of Appeals rulings, but this has been 30 years of pretty much here is the statute, here is the Uniform Instruction, and I haven't heard any evidence today that this was a practice error. The whole concept is, this is, that instruction was utilized by all and everyone felt it was appropriate and they didn't have this inappropriate interpretation of it.

Respondent's Exhibit 126, p. 49.

*Strickland* does not require counsel to make every conceivable objection, or to anticipate changes that might be coming in the law. Instead, it mandates only that an attorney render "only objectively reasonable advice under prevailing professional norms." *Sophanthavong v. Palmateer*, 378 F.3d 859, 870 (9th Cir. 2004) (citing *Strickland*, 466 U.S. at 690). Petitioner's trial attorneys were not obligated to object to a jury instruction that was firmly established, widely accepted, and routinely given in Oregon. Their performance therefore did not fall below an objective standard of reasonableness. Even if counsel had objected, given that the instruction had been customary in Oregon for decades, it is unlikely the judge would have sustained such an objection. At a minimum, the PCR court's decision to deny relief on Ground Five is not so unreasonable that no reasonable jurist could agree with it. *See Richter*, 562 U.S. at 102.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The Court declines to issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

4/18/2023
DATE

*Michael W. Mosman*
Michael W. Mosman
United States District Judge

14 – OPINION AND ORDER